Good morning, Your Honors, and may it please the Court. My name is Ryan Kaplan, and I represent the appellants, First One Lending Corporation and John Becerra. I'd like to reserve three minutes for rebuttal. I'd like to begin our discussion this morning by recognizing a number of uncontroversial principles guiding when the duty to defend is triggered in a defense case, an insurance defense case. The first being that the duty to defend is triggered when a third-party complaint potentially seeks damages covered by a policy. The second is that damages in the context of what is insurable means payments made to compensate a party for injuries it is alleged to have incurred. The third principle is that when assessing whether the duty to defend has been triggered, the Court looks to the allegations of the complaint, the entire complaint, not any one part in isolation, as well as the facts reasonably inferable from those allegations, and does not necessarily rely on the labels used by the third-party plaintiff in drafting the complaint, as well as any extrinsic evidence that has been made available to the insurer. And the final point I'd like to make is that in the context of a summary judgment motion, the insurer will be relieved of its obligation to defend only if the underlying complaint can, by no conceivable theory, raise a single issue which could bring it within the policy coverage. With this backdrop, the issue presented here is whether the Hartford satisfied its burden of proving that the third-party plaintiff here, NACA, in asserting its claim, could by no conceivable theory encompass a claim for monetary damages designed to compensate NACA for injuries it allegedly incurred by the appellants. So the district court looked at the complaint. Yes. And said, well, and the district court focused on the prayer for relief. It did, Your Honor. And it said, look, they were just asking for, like, restitution or disgorgement, sort of an equitable remedy. It doesn't qualify as a matter of law as damages. Your Honor, I would address that. And the district court said, that's not covered by the insurance policy. That is what the district court ruled, Your Honor. If I look, I have the complaint right here in front of me. What is it about the complaint that would suggest that really what, although they make reference to reimbursement or whatever, they make reference to some equitable kind of relief, that doesn't necessarily exclude damages. So what is it about this complaint that would suggest there's a possibility? Well, I think that the superior court could have awarded, or whoever it was in this, I guess the district court could have awarded, in the original underlying action, could have awarded damages. I understand. And I would say a number of things, and you might have hit the nail on the head, that it does not necessarily exclude damages, which is the appropriate standard here. But focusing on the complaint itself, what I would argue is that you have to consider not simply the prayer for relief. You have to consider not just the allegations throughout the complaint, but as well as the cost. My question was, what allegations here suggest that they were seeking damages, or there was a possibility that they could recover damages? I was going to finish that point by saying not simply the allegations, but as well as the causes of action under which the allegations are brought. So here, to answer your point, to answer your question, the point is under a Lanham Act claim, a plaintiff, a Lanham Act plaintiff, can use the defendant's profits as a measure of the plaintiff's damages. And that's the crucial point here. When we look at it, we have to reconcile these insurance principles where pure restitution or pure discouragement or pure divestment of ill-gotten gains is not necessarily insurable. With the line of cases and the causes of action we have at issue in this case, which is a Lanham Act claim and a common law unfair competition claim. With respect to the Lanham Act claim, a plaintiff can measure its damages, not discouragement, its damages off of the defendant's profits. That's found in 1117A of the Lanham Act. It's recognized under the Lindypin decision, under the Skydive Arizona decision, and more specifically, it's recognized in the Spinmaster decision, which said, as I quote, under 1117A, a plaintiff may recover in infringing defendant's profits in two situations. Number one, as a measure of the plaintiff's own damages, or, in the disjunctive, number two, on a theory of discouragement of the defendant's unjustly obtained profits. Roberts, okay. So I was asking you to show me in the complaint or to point to me in the complaint what supports that, and I'll do it for you. It looks to me like it's paragraph 52. I'm sure I'm on the same page as you with the paragraph. Of the first, I think it's paragraph 52. Yes, Your Honor. I would say not exclusively paragraph 52. No, no, no, just this one. That's one. Paragraph 52. The remedies available at law are not adequate to fully compensate NACA for the harm caused by a defendant's misconduct, including the harm suffered by NACA for its continued loss of goodwill and exposure to civil claims based on first one's fraudulent and wrongful conduct. Then, if you go down, paragraph 57, defendant's scam has and will continue to negatively affect NACA's reputation and goodwill. NACA has suffered harm and will continue to suffer harm by defendant's misleading and affiliation with NACA and the passing off of NACA services as its own. Yes, and I would also add to those paragraphs 55, as well as paragraph 2 of the prayer for relief. In addition to that, I would add paragraphs 51, 45, and a number of others cited within our brief. The issue is when looking at these competing, I don't even want to say competing, but when looking at these potentially parallel or corollary principles of law, it is necessary to reconcile them with the standard for the duty to defend, and the duty to defend requires only a potential for covered damages. So under a Lanham Act claim, a plaintiff seeking to recover monetary relief measured off of the defendant's profits does not necessarily exclude that being compensatory to the plaintiff. And that's the real issue here, because to defeat the duty to defend, it's not enough that the monetary relief could be considered disgorgement or could be considered restitution. It must exclusively be considered disgorgement or restitution. I never did understand where the restitution idea came from here. They weren't representing, they couldn't, they wouldn't have had standing, I don't imagine, to actually represent the people who would pay these amounts. Exactly, Your Honor. And the restitution concept does not really come into play in this underlying lawsuit. It's just an articulation of the standard that the Hartford relies upon. But if we set this back, you actually might still lose, right, because you could still lose if they decided that it was against public policy. If we decided what was against public policy? To have the insurance company end up paying the amounts that your client actually took. The only way that it would lose, Your Honor, would be if the district court were to find, based on the facts, that that was the exclusive remedy sought, which is contrary to the pleaded allegations as well as the causes of actions alleged. Okay, so what you're saying is it would be a trial. It would be a trial. As well as, and I want to also bring into consideration the settlement agreement that was ultimately reached when the insured here was not provided an insurance defense because the settlement agreement itself, like the Unified Grocers case, was for an amount in excess of the alleged restitutionary or disgorgement figures that were being urged by the underlying plaintiff. But you, excuse me, counsel, for interrupting, but the first one argues that the settlement amount should have fallen within the October 2012 interrogatory response profit calculation. But as I see it, the interrogatory response was just provisional and based on discovery as of that date. How does this show that NACA was therefore seeking compensatory damages? What I would say to that, Your Honor, is that is precisely an issue of fact that needs to be addressed at the district court that was not addressed at the district court here. On a motion for summary judgment, the insurer must conclusively eliminate any potential for coverage. And on the facts that were presented before the district court, we had extrinsic evidence that showed a potential disparity. And that is, I agree, a potential disparity that may or may not pan out. And that's ultimately for the trier of fact to determine. But on the evidence presented to the district court, there was a disputed issue of fact in terms of any sort of disparity between the allegations of restitution or disgorgement that may have been alleged or the amounts that may have been sought versus the ultimate settlement amount, which on the facts presented encompassed more than what was being sought under a restitutionary theory. And that discrepancy under Pan Pacific and United Grocers gives rise to an issue of fact precluding summary judgment. So the district court just said, given that you were not seeking the complaint, was not seeking damages, and therefore there was no duty to defend and no duty to indemnify. That's it, Your Honor. Is that right? Is that what the district court said? So I just want to follow up on what Judge Bucklow alluded to, which is that assuming we were to agree with you and it goes back, could there be another motion for summary judgment? On this particular issue? No, not on this issue, but on the issue that Judge Bucklow raised, for example. The district court made a – I was reading the district court, the argument before the district court. The district court was all kind of concerned that – or asked a lot of questions that we're not concerned about. There are no other issues raised here like intentional wrongdoing? No, there's not, Your Honor. The Hartford made the conscious decision to move for summary judgment exclusively on this theory that an insurance company does not owe a duty where there's pure restitution or pure disgorgement being sought to the exclusion of any others. We would argue that the NACA action was not that case because when you look at the causes of action as well as the allegations that were incumbent in this case, which is distinguishable from the cases cited by Hartford in support of its position, we have Lanham Act claims and common law unfair competition claims that necessarily encompass compensatory damages. Well, how does – I'm trying to figure out what happens when it goes back. There's a trial on what issue? Duty to defend? Duty to defend, Your Honor. Or duty to indemnify? Well, indemnification would come later, but the duty to defend would certainly be at issue and it's much broader than the duty to indemnify. It is – to answer your point, Judge Bucklow, it is potentially possible that a court finds based – a trier of fact, a jury finds that there were, in fact, allegations encompassed within the NACA complaints as well as the extrinsic evidence that showed a potential for coverage, in which case the Hartford had a duty to defend. It's also potentially possible that the trier of fact finds that the ultimate award was purely – or was unassurable. Those are two separate concepts. And the duty to defend – So you'd have – so it would be experts testifying about what one could recover in such a case. Could be, Your Honor. I'd like to reserve the floor. Did you want to save some time? I did. Thank you. All right. Good morning, Your Honors. Anne Johnston for Hartford. I'll start by saying I don't necessarily disagree with some of the broad standards that have been advanced here. I think that the proper approach is to examine this particular pleading. And this particular pleading has a couple of very important things in it. Number one, it says that NACA performs these services for free. And that is very important in this analysis. And number two, it says that NACA, after first one, diverts the clients through the false affiliation, et cetera, et cetera, they're then referred back to NACA. So there's no lost profits by the facts pled in this pleading. There's no potential. There's no restitution either. I'm sorry? There's no restitution. They weren't representing these people. How could they do that? That's a great question. But they were. The standing issue – I completely agree. How did this happen? How is this allowed to go forward when they didn't necessarily have standing to represent the homeowners? They didn't even know if they got the money. But that is the relief that they were seeking. They were, in fact, seeking, as they state in this complaint, return of the money to the homeowners. Because all they plead in this complaint, again, concentrating on the facts, is that first one charged $1,800, $2,000, and they shouldn't have done that. That was very bad, very illegal. All these reasons why they shouldn't have done it. And they should give it back. Well, I'm looking at the prayer for relief in page 21 of the complaint. Number two, an award in the amount of defendant's profits, and you say there are none, or, or an order requiring restitution. Doesn't that seem to indicate they're asking for more than restitution? I'm sorry, can you repeat that last part? They're asking for more than restitution? Yes. Well, it's an or. And I would agree, if we look, the restitutionary part, I don't know that there's a lot of debate about that. Restitution would not be covered. The debate seems to focus on the amount of defendant's profits. I agree that under IP law, in the cases that counsel cited, that there are three justifications for awarding the infringer's profits. As a measure of compensating plaintiff for diverted sales, for their own damages, to prevent unjust enrichment, and as a deterrent. Those latter two, I don't think, again, that there's a lot of debate over whether or not they would be covered. They would not. So then we look at the first one. As a measure of compensating plaintiff for diverted sales. There were no diverted sales under these facts. Let me ask you this. So this is a non-profit, correct? Yes. You think a non-profit can suffer damage to its reputation? I do. I do. You don't think that's what they're alleging here? They do allege that. But why do they allege that? Let's look at the question. Well, they say our reputation was damaged by what NACA provided. It's something that's federal court, isn't it? And goodwill. Yes, they do say that. So they're saying, so how do you prove, you know, how do you prove the amount of the damage to your reputation? One way, they suggest, as I read the complaint, is, well, whatever profits this other guy made over here, that's our damage, and we want you to pay us that amount. What we do with the money after that is our business. No, I don't agree that that is worth the complaint. Well, I'm just positing that to you. I understand. And I think if we look at Paragraph 7 of the complaint, because I think that the correct way to approach this case is to look at the complaint just as Your Honor posited from the get-go. That is what we need to look at. So Paragraph 7. Hold on, hold on. I'm turning to Paragraph 7. You said that it's important. Got it. So Paragraph 7 basically summarizes what they want. This is their preliminary statement. Now, why people put preliminary statements in federal complaints, I've never understood. But it's a preliminary statement. It's a preliminary statement that sort of summarizes the rest of the complaint. And the rest of the complaint is completely consistent with that. Why is lost profits here as a basis for injunctive relief? They have to show some damage to get injunctive relief. And what they're saying is, and that's, I misspoke, not lost profits, but goodwill and reputational damage. That is why they plead that, in order to get the preliminary injunction, which they ultimately got. Otherwise, devoid of that, they couldn't get an injunction, because all of the damage was to somebody else, the homeowners. The money given back. So they can't get compensatory damages for the damage to their reputation, if they get an injunction to stop the misrepresentation. It's ongoing. You know, this is just a complaint. Maybe they stop that, and any claim for injunctive relief would be moot. What would the compensatory damage be if they don't make any money? If they don't make any money. That was the question I posed to you. How do you measure a nonprofit that's not in the business of making money, but they can suffer damage to their reputation and to their good name. How do you value that? You don't. So they don't get anything. So they're a nonprofit, and they don't get anything. But nonprofits, this said more than that. I find that difficult to accept. So the Rent-A-Car case that we cited, the Rent-A-Center Ninth Circuit case, talks about this in terms of tangible injuries, such as damage to ongoing recruitment efforts and goodwill. These are tough to quantify. So how are we going to do this? But if they didn't do any damage, then they shouldn't have gotten an injunction either. That's why they pled a damage. Because under the injunctive relief standard, the remedy at law has to be inadequate. So it was inadequate because you can't quantify that. So that's why they pled it as the basis for injunctive relief. That's a reason sometimes for using lost profits as well as the damage calculation is because you can't quantify damage. That's a little bit different. This is potentially seek damage within the coverage of the policy. It's a pretty loose standard to be able to take this complaint and say, oh, there's no possible way. Well, I believe there's no possible way without speculating. We read the entire thing in context, in the context of the allegations. And it is strange that there's no standing in the underlying case, that standing didn't become a bar to some of the allegations. I noticed in the settlement agreement there isn't anything saying, okay, this is how the money is going to be repaid to these people. You can try to submit some other things, but they're really outside the – As is the settlement. The settlement agreement is irrelevant to the analysis. Yes, it is irrelevant, but except that to the extent you're saying, well, this was all really about reimbursing these homeowners. Because that's what's pled. But the settlement agreement is at the end of the case and cannot be considered in terms of evaluating the duty to defend. We can't have hindsight, just for the very reasons that they're objecting to us referencing what ultimately happens in this case. So we are focusing on the allegations. All those principles, though, about any doubt as to whether facts establish the existence of a defense duty have to be resolved in the insurance favor. You apparently chose to go to summary judgment on this particular ground when, as the district judge said, you might have had some better ones. And there are additional grounds, and we say repeatedly in our briefs that we reserve on that. It was a lot to brief in one brief the 533 argument, which is very complex, and the damages argument, which also, unfortunately, is complex as well in this particular context. But I think here, focusing on the allegations of this complaint, which is all anyone really had at the time, the discovery responses are the only other thing that have really been raised by the plaintiff as triggering a defense duty, and they don't really say anything contrary or different from the allegations in the complaint. But we have Ninth Circuit cases, one of which I wrote, which says, this is the Anthem case, the insurers have a heavy burden when seeking summary judgment on the duty to defend. Suppose I'm a nonprofit and I have a young lawyer whose name is Paez, he says. It makes no sense not to allow them to sue for their damage. Now, he may lose. The question is, is there a duty to defend which is much lighter standard than the duty to identify?  Well, I think the question would turn on, did they sue for that? Did they sue for that damage? And that's what I'm saying. In the context of this complaint, they were not suing for that damage. They were asserting that damage as a grounds to enable them to plead injunctive relief properly to show some damage. But when we look at what relief they really sought, it was injunctive relief, and the complaints, as they spun on, just got more and more specific about that. Discouragement of profits or, which would have been a measure of damages, or restitution and attorney's fees, punitive damages, whatever the rest of them were. Well, it could be that the discouragement of profits would be another way of saying you made money damaging our reputation, and the way to measure the damages would be the profits. I completely agree with that. But in that context, you made money ripping off these people. What the allegation was, you took this money wrongfully. You now have to give it back. That is discouragement of ill-gotten gains. That is not covered. That is what is being sought here when this complaint is read as a whole. It's the potential for coverage. The potential for coverage has its limits. I know that sounds like a contradiction in terms. But the Gunderson case, all these cases talk about the limitations. We have to look at the relief. If it was a complaint, let's just take a simplistic example of it. But the problem is, as I pointed out at the very beginning, they do allege reputational harm as a result of the false advertising. Right? Right. And in the complaint, they allege a way of measuring monetary relief. But that, you know, under the Lanham Act or the common law Lanham copyright or trademark theories that were alleged here, easily the potential for that to be explicitly clear that that was just a way of measuring their damages is pretty obvious. I don't know. I think that when you have the allegation of the loss of profits in the context of a company bringing that allegation saying, we don't make any money and the defendant did all these wrongful things and we want them to return this to the homeowner, that the allowance in the IP cases for using the defendant's profits as a measure of the plaintiff's lost profits, every single case. I don't mean to repeat myself, but I have a difficulty with the notion that a nonprofit, whether it be a nonprofit that Judge Nelson is running or some other nonprofit, cannot get damages for its reputation. Does it make any sense? That makes no sense to me. It doesn't mean that the fact that they don't make profits doesn't mean they don't have income. I don't know in this case where it was coming from, from the government, I suppose. I mean, they wanted to exist. The nonprofits are billion-dollar parts of our economy, I suppose. And so the government or whoever it is, California or the U.S., whoever was paying them or foundations or whoever, if they think that really somebody that's associated with them is swindling people, they might well say, we don't need to deal with you and cut them out. So it seems to me reputational damage could be quite real. I agree, except that here. And reputational damage to a nonprofit, if there's some monetary loss that could result where you could use the defendant's profit as that measure of damages, that would be one thing. Here, there is no monetary loss. So the only other way they could plead that, there's no equation. There's no connection between the defendant's profits and the reputational damage because there's no monetary damage from the loss of reputation. It's an intangible. In this particular situation, based on this pleading that says we don't make any money, so therefore it doesn't mean that they don't have reputational damages for which they're entitled to a remedy. It's just their remedy isn't money. Their remedy is cut it out. Stop falsely affiliating and associating. Breyer, I just find that. I mean, I don't have authority to give you, but I find that notion difficult to agree with. I really do. Ginsburg, particularly when they ask for an award in the amount of defendant's profits, that doesn't equate to me for disgorgement. We measure the award and what the defendant's made by using our reputation and goodwill and then sending the people to us to service. So that's my only point. I'll leave you over time, and I think the other side has a couple of minutes for rebuttal. Thank you. Thank you, Your Honors. A couple points. In listening to the Hartford's arguments, it seems to me that there seems to be a conflating of the duty to indemnify with the duty to defend standard we have here. The arguments seem to focus on NACA could not have, or NACA's damage model was flawed. And when we assess the duty to defend, it's important to take a look at the allegations because it's only the potential for seeking cover damage that triggers the duty to defend. And Hartford very well could have come in, defended first one in this case, and in the defense said, okay, NACA, you have problems with your case. But the potential for liability, as remote as it may be, is not necessarily the standard for triggering the duty to defend. I also want to point out that these allegations of reputational harm and injury to goodwill, they were not made exclusively within the context of the request for injunctive relief. You see that in the common law unfair competition claim. Here we have a situation where the arguments being proffered by Hartford are to look at particular points of the complaint in isolation and not in the entirety of the complaint and the entirety of the allegations, which is the appropriate barometer for assessing the duty to defend. The court can reverse the decision here and leave intact the duty to defend standard that's been articulated by this court in Anthem, leave intact the policy that's been espoused in Bank of the West case, which is relied heavily upon by Hartford, and rest assured that there will be no fee change in the legal landscape dealing with the duty to defend in California. I'd respectfully request that the court reverse the amendment. Okay, thank you, counsel. We appreciate your arguments. Interesting case. The matter is submitted at this time, and that ends our session for today. Thank you all very much.
judges: D.W. Nelson, Paez, Bucklo